670 So.2d 461 (1996)
STATE of Louisiana
v.
William P. JAMES.
No. Cr95-962.
Court of Appeal of Louisiana, Third Circuit.
February 14, 1996.
*463 William E. Tilley, Leesville, for State of Louisiana.
Jack L. Simms Jr., Leesville, for William P. James.
Before THIBODEAUX, SAUNDERS and SULLIVAN, JJ.
SULLIVAN, Judge.
Defendant, William P. James, was charged by bill of information with one count of conspiracy to commit armed robbery, in violation of La.R.S. 14:26 and La.R.S. 14:64, and one count of armed robbery, in violation of La. R.S. 14:64. Defendant entered pleas of not guilty, which he later withdrew and, with the assistance of counsel, entered a plea of guilty to armed robbery. Before accepting the plea, the trial court fully Boykinized defendant and informed him of the possible penalty. Defendant was sentenced to 15 years at hard labor without benefit of suspension of sentence, probation, or parole. The trial judge noted for the record that defendant was given credit for time served and advised defendant of the three year prescriptive period in which to file for post conviction relief.
Defendant filed a motion to reconsider sentence which was denied by the trial judge. Defendant also filed a post-conviction relief application which the trial court denied, except that defendant was given an opportunity to establish in an evidentiary hearing that defense counsel was at fault in failing to perfect a timely appeal. The trial court subsequently granted defendant an out-of-time appeal. Defendant now seeks review with this court alleging eight assignments of error.

FACTS
On September 23, 1992, defendant and Russell Hawkins planned to rob the North City Branch of Merchants and Farmers Bank in Leesville, Louisiana, with defendant as the gunman and Hawkins the get-away driver. Defendant entered the bank brandishing a loaded pistol in front of four employees and demanded money from the tellers. Over $20,000.00 was taken from the bank, with authorities later recovering all but $8,700.00 of the stolen money.
A review of the record reveals no errors patent.

EXCESSIVE SENTENCE
Defendant's assignments of error numbers one through four concern the sentence *464 imposed. Defendant argues that his sentence was excessive, that the trial court failed to justify its deviation from the sentencing guidelines with adequate oral or written reasons as required by law and that the trial court failed to consider and/or give proper weight to mitigating factors.
Defendant was sentenced on July 30, 1993. At sentencing, the trial court informed defendant of the five day period within which to appeal. However, defendant did not make or file a timely appeal. Further, defendant did not file a motion to reconsider sentence until March 8, 1995. The motion was denied by the trial judge on March 15, 1995. Defendant also sought an out-of-time appeal which was granted by the trial court on June 16, 1995.
La.Code Crim.P. art. 881.1 provides the mechanism for preserving the review of a sentence on appeal:
A. (1) Within thirty days following the imposition of sentence or within such longer period as the trial court may set at sentencing, the state or the defendant may make or file a motion to reconsider sentence.
* * * * * *
D. Failure to make or file a motion to reconsider sentence or to include a specific ground upon which a motion to reconsider sentence may be based, including a claim of excessiveness, shall preclude the state or the defendant from raising an objection to the sentence or from urging any ground not raised in the motion to appeal or review.
Where the defendant did not file a motion to reconsider sentence within the 30 day period allowed by La.Code Crim.P. art 881.1 and the trial court did not set a longer period at sentencing for filing the motion, this court held it was precluded from reviewing defendant's sentence. See State v. King, 95-344 (La.App. 3 Cir. 10/4/95); 663 So.2d 307.
In King, the defendant appealed his sentence as excessive; however, this court refused to consider that claim because the defendant did not file a motion to reconsider sentence nor did he orally object at sentencing on the basis of excessiveness. After that appeal was dismissed in an unpublished opinion, King sought and was granted leave to file an "out-of-time motion to reconsider sentence" in the trial court. That motion was denied without a hearing. Thereafter, King filed a second appeal to this court, again raising the issue of excessiveness of sentence. This court dismissed the appeal after determining that neither the Code of Criminal Procedure nor jurisprudence contemplated an "out-out-time motion to reconsider sentence." State v. King, 95-344 n. 1 (La.App. 3 Cir. 10/4/95); 663 So.2d 307.
In the present case, the motion to reconsider sentence was filed approximately one year and eight months after sentencing, well beyond the 30 day requirement provided by La.Code Crim.P. art. 881.1. The record of sentencing does not reflect that the trial court gave any additional time in which to file the motion.
Because the motion to reconsider sentence was not timely filed, defendant's assigned errors one through four lack merit. However, we will review defendant's sentence in the context of his ineffective assistance of counsel claim.

INEFFECTIVE ASSISTANCE OF COUNSEL
In assignments of error numbers four through eight, defendant argues that the ineffective assistance of his retained counsel resulted in a denial of due process, deprived him of a full sentencing hearing and resulted in the trial court basing the sentence imposed upon false, unsubstantiated statements in the presentence investigation report. As defendant combined these assignments of error in his brief, we will do likewise.
Although defendant has assigned as error ineffective assistance of counsel, this claim is properly raised in an application for post-conviction relief. State v. Burkhalter, 428 So.2d 449 (La.1983). This enables the district judge to order a full evidentiary hearing on the matter. State v. Seiss, 428 So.2d 444 (La.1983). However, where the record contains evidence sufficient to decide the issue, and the issue is raised on appeal by an assignment of error, the issue should be *465 considered. Accordingly, we will address defendant's claim of ineffective assistance of counsel.
The right of a defendant in a criminal proceeding to the effective assistance of counsel is constitutionally mandated by the Sixth Amendment of the U.S. Constitution. In order to prove that counsel was ineffective, the defendant must meet the two-pronged test enunciated by the Supreme Court. First, the defendant must show that counsel's performance was deficient. Second, the defendant must show that this deficiency prejudiced the outcome of the trial. Strickland v. Washington, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984); State v. Brooks, 505 So.2d 714 (La.1987), cert. denied, 484 U.S. 947, 108 S.Ct. 337, 98 L.Ed.2d 363 (1987). To establish a claim of ineffective assistance of counsel, a defendant must demonstrate that his defense attorney failed to meet the level of competency normally demanded of attorneys in criminal cases. State ex rel. Graffagnino v. King, 436 So.2d 559 (La.1983); State v. Fickes, 497 So.2d 392 (La.App. 3 Cir.1986), writ denied, 515 So.2d 1105 (La.1987).
In considering allegations of ineffectiveness, defense attorneys are entitled to a strong presumption that their conduct fell within the broad range of reasonable professional assistance. The United States Supreme Court has held that the benchmark for judging a charge of ineffectiveness is whether the attorney's conduct so undermined the proper functioning of the adversarial process that the trial cannot be considered to have produced a just result. United States v. Cronic, 466 U.S. 648, 104 S.Ct. 2039, 80 L.Ed.2d 657 (1984); Strickland, 466 U.S. 668, 104 S.Ct. 2052.
It is not enough for an accused to make allegations of ineffectiveness; the accused must couple these allegations with a specific showing of prejudice. State v. Brogan, 453 So.2d 325 (La.App. 3 Cir.), writ denied, 457 So.2d 1200 (La.1984). A claim of ineffective assistance of counsel may be disposed of based upon a failure to satisfy either criteria of the established two-pronged test; if the accused's claim fails to satisfy one, the reviewing court need not address the other. State v. James, 555 So.2d 519 (La.App. 4 Cir.1989), writ denied, 559 So.2d 1374 (La. 1990). A brief review of the defendant's complaints against his attorneys will demonstrate the deficiency of his arguments.
Defendant alleges that his counsel was ineffective because he failed to appeal the case and that this failure denied him the right to appeal his sentence. Defendant admits this error was corrected by the trial court when it granted him an out-of-time appeal. This claim is rendered moot because defendant is now before this court on appeal. Additionally, defendant does not claim his counsel was ineffective for failing to file a motion to reconsider sentence.
Defendant next contends that certain letters in the record demonstrate that his retained counsel, F. Clay Tillman, failed to pursue all of the legal rights due defendant. To the contrary, the letters in the record do not indicate a deficient performance on the part of retained counsel.
Those letters reflect defendant's concern that his accomplice, Russell Hawkins, would receive favorable treatment because Mr. Hawkins' grandfather was a friend of the trial judge. In a strategic move, Mr. Tillman continued defendant's plea until after Mr. Hawkins' sentencing, thereby permitting an argument that defendant should receive the same treatment. Before defendant was sentenced, Mr. Tillman requested by letter that defendant gather whatever information he wanted the judge to consider in imposing sentence, such as letters from family, friends, clergy, etc. The letters from counsel further reflect that Mr. Tillman accomplished defendant's primary concern of not receiving a sentence disproportionately more severe than that of Mr. Hawkins: defendant and Mr. Hawkins received identical sentences. Mr. Tillman also informed defendant that an appeal bond was unlikely, that he did not consider the sentence excessive in light of the crime charged and surrounding circumstances, and that an appeal would not be beneficial and would only incur more costs. Mr. Tillman further advised defendant that his best hope for future relief would be to *466 apply to the Pardon Board for a commutation or reduction of his sentence.
Defendant has neither specified in what manner these letters indicate that Mr. Tillman's representation was ineffective, nor has he shown any prejudice suffered as a result of counsel's actions.
Defendant next alleges that defense counsel failed to present certain letters to the trial judge for consideration at sentencing. These letters were written by family members, his wife, and his employer. Contrary to defendant's allegations, the record indicates that the letters were submitted. In ruling on defendant's application for post-conviction relief, the trial judge wrote, "... the claim that the letters were not submitted by counsel prior to sentence is factually untrue. The court was furnished and considered the six letters submitted by counsel and annexes copies hereto."
Defendant next argues that his other attorney, Scott Westerchil, failed to investigate his case, failed to say anything meaningful on his behalf at sentencing, and denied him the opportunity to refute false, unsubstantiated information in the presentence investigation report (PSI). Defendant contends that he would have received a more lenient sentence had the trial court known that he was dismissed from his job because of a head injury rather than a positive drug screen as indicated in the PSI, that he had been employed from the time of his plea through sentencing, and that he "timely" paid two checks that were listed as NSF charges in the PSI. Defendant also claims that the PSI erroneously indicates that he has a juvenile record.
While a defendant is guaranteed the right to contest allegations and statements in a PSI report and additional information to which the sentencing court was exposed, defense counsel must make a timely request prior to sentencing for access to the PSI report and must make some showing that the report contains, or other information upon which a trial court relies in imposing sentence consists of, materially false or misleading information prejudicial to the defendant. State v. Coleman, 574 So.2d 477 (La. App. 2 Cir.1991). Where a trial court fails to allow a defendant access to the report and an opportunity to rebut any adverse and materially prejudicial information, reversible error has occurred. State v. Underwood, 353 So.2d 1013 (La.1977). The defendant must show that he has suffered prejudice as the result of the inclusion of the inaccurate information in the report. See State v. Hammond, 526 So.2d 1257 (La.App. 3 Cir.1988).
The transcript of the sentencing colloquy reveals that the trial court informed defense counsel, but not defendant, of the PSI's contents in accordance with La.Code Crim.P. art. 877. Before imposing sentence, the trial court gave the defendant an opportunity to speak on his behalf. The trial court noted defendant's status as a first offender.
Reviewing the entirety of the record, we are unable to conclude that defendant suffered any prejudice because of the alleged inaccuracies in the PSI. Defendant contends that the statement in the PSI that he was fired from his job on the date of the crime because of a positive drug screen is false. Even if this statement were untrue, the record contains other references to defendant's use of illegal substances that defendant does not dispute. The PSI indicates that defendant was discharged from the military because of a positive drug screen, and in his statement to the police, defendant admitted that on the day of the crime he used some of the stolen money to purchase marijuana. Defendant also contends that he was denied the opportunity to prove that he paid the two NSF charges listed in the PSI, for $69.41 and $57.46, within ten days, thereby negating any intent to defraud. However, the defendant admitted in his statement to the police that he had many other outstanding NSF checks, including one for over $600.00 to AT & T. Defendant also contends that the PSI erroneously indicates that he had a juvenile record. However, the only reference in the PSI to a juvenile record is a statement attributed to defendant himself that he did have such a record but that he refused to disclose any information about it to the probation officer who prepared the report. The report also indicates that defendant was "smug" about his juvenile record, stating that the probation officer would be unable to gain access to it anyway.
*467 Although the trial judge recited the contents of the PSI in open court, he did not state that he considered that information in either aggravation or mitigation. Rather, the court emphasized the severity of the crime, stating:
It simply cannot be gainsaid that a risk of great bodily [harm] or death to at least the four employees present was created. This defendant was armed with and brandished a .38 caliber pistol. He conversed with, threatened and/or gave orders to at least three of those employees while he was in the bank and while he was so armed. The threat of actual violence and the risk of personal injury or death was, in the opinion of the court, present throughout the time that the robbery was being carried out. This offense must be considered as one with some major economic consequences. At least a portion of the money taken was allegedly never returned to the victim. It was contended by the bank that a total of twenty thousand, five hundred and sixty-eight dollars was taken by the defendant. The defendants admitted using a total of two hundred and twenty dollars of the stolen money. Police recovered only eleven thousand, two hundred and ninety-eight dollars.
Defendant also contends that had his attorneys investigated his case, they would have discovered as mitigating factors that he sustained a head injury at work, which may have influenced his conduct in this crime, and that he was in fact employed from the time of his plea through his sentencing. We note that in his statement to the police defendant did not mention a head injury as a factor in the loss of his job or in the commission of this crime. The statement reveals that defendant planned and committed the crime because he needed money for bills and his outstanding NSF checks. The record does contain conflicting evidence of defendant's employment between his plea and sentencing; however, we fail to see how the court's consideration that defendant was employed for those three months would have affected the sentence imposed.
The record reveals that the trial judge considered the sentencing guidelines and stated for the record the considerations taken into account and the factual basis for his imposition of sentence. We are, therefore, limited to a review of the sentence imposed for constitutional excessiveness without regard to whether the trial judge either employed or deviated from the guidelines. State v. Smith, 93-402 (La. 7/5/94); 639 So.2d 237.
Defendant's conduct created a risk of great danger to four innocent persons and resulted in a substantial economic loss to the bank. In State v. Jefferson, 606 So.2d 869 (La.App. 2 Cir.1992), the court affirmed a sentence of 16 years for an armed robbery conviction for a 23 year old defendant who had no prior felony offenses and a history of employment. In State v. Everridge, 523 So.2d 879 (La.App. 4 Cir.1988), a 15 year sentence for armed robbery was affirmed, even though the defendant had no prior convictions. Additionally, defendant received the same sentence as his accomplice, who was apparently unarmed during the commission of the crime.
Defendant's sentence is supported by his conduct and by those facts in the record that are uncontroverted. Defendant has, therefore, failed to show that he suffered any prejudice from either inaction by his counsel or from the alleged inaccuracies of which he complains.
For the above reasons, defendant's sentence is affirmed.
AFFIRMED.